UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUTH CALDERON-CARDONA ET AL.,<br><br>Petitioners/Judgment-Creditors,<br><br>-against-<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS,<br><br>Respondent/Garnishee. | Docket No: M-18-302<br>Judgment No. 10,1746<br><br>**FILED UNDER SEAL** |

MEMORANDUM OF LAW OF RESPONDENT/GARNISHEE
DEUTSCHE BANK TRUST COMPANY AMERICAS
IN RESPONSE TO ORDER TO SHOW CAUSE

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

*Attorneys for Deutsche Bank Trust Company Americas*

TABLE OF CONTENTS

Table of Authorities ................................................................................................................. i

Introduction ............................................................................................................................ 1

Preliminary Statement ............................................................................................................ 1

Statement of Facts .................................................................................................................. 2

Argument ............................................................................................................................... 5

I. TRIA DOES NOT APPLY TO PROPERTY OF THE DPRK ................................... 5

II. IN ORDER TO EXECUTE AGAINST THE DBTCA BLOCKED ACCOUNTS, PETITIONERS MUST ESTABLISH THAT THE ACCOUNTS BELONG TO THE JUDGMENT DEBTORS. ............................................................................................ 6

   A. Under the Terrorism Risk Insurance Act, Plaintiffs Must Show That the Blocked Accounts Are Assets of the Judgment Debtors ................................... 6

   B. Under the CPLR, Petitioners Must Demonstrate That the Blocked Accounts Are Assets of the Judgment Debtors ............................................... 7

   C. The FSIA Also Requires That Petitioners Demonstrate That the Blocked Accounts Belong to the Judgment Debtors ................................................... 8

   D. Petitioners Have Failed to Demonstrate That the DBTCA Blocked Accounts Belong to the Judgment Debtors or Their Agencies or Instrumentalities ........ 8

III. ALL THIRD PARTIES WITH AN INTEREST IN THE ACCOUNTS SHOULD BE JOINED TO THE EXTENT FEASIBLE. ................................................................ 10

Conclusion .......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bergdorf Goodman, Inc. v. Marine Midland Bank*,
   411 N.Y.S.2d 490 (Civ. Ct. 1978) ...................................................................................1

*Citibank (South Dakota), N.A. v. Island Fed. Credit Union*,
   740 N.Y.S.2d 546 (App. Term 2001) ..........................................................................7, 11

*Continental Commerce Corp. v. York Plastic Products Corp.*,
   237 N.Y.S.2d 278 (Sup. Ct. 1963) ....................................................................................7

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
   609 F.3d 111 (2d Cir. 2010) ..............................................................................................9

*Grain Traders Inc. v. Citibank, N.A.*,
   160 F.3d 97 (2d Cir. 1998) ................................................................................................8

*Hausler v. JP Morgan Chase Bank, N.A.*,
   No. 09 CIV. 10289 (VM), 2010 WL 3817546 (S.D.N.Y. Sept. 13, 2010) ........................9

*Schneider v. Nat'l R.R.. Passenger Corp.*,
   72 F.3d 17 (2d Cir. 1995) ................................................................................................10

*Shipping Corp. of India Ltd., v. Jaldhi Overseas Pte Ltd.*,
   585 F.3d 58 (2d Cir. 2009) ................................................................................................9

*Trustco Bank, Nat. Ass'n v. Strong*,
   699 N.Y.S.2d 805 (3d Dep't 1999) ...................................................................................7

*Weininger v. Castro*,
   462 F. Supp. 2d 457 (S.D.N.Y. 2006) .........................................................................6, 10

### RULES AND STATUTES

31 C.F.R. § 500.201 (1992-94) ................................................................................................4

31 C.F.R. § 510.202(e) ...........................................................................................................12

CPLR § 404(a) ........................................................................................................................12

CPLR § 1001 ..........................................................................................................................10

CPLR § 1001(a) ......................................................................................................................10

CPLR § 1001(b) ......................................................................................................................10

CPLR § 5225 .................................................................................................................................11

CPLR § 5227 .................................................................................................................................11

73 Fed. Reg. 37,536-84 (July 1, 2008) ..........................................................................................4

73 Fed. Reg. 63,540-01 (Oct. 28, 2008) .........................................................................................5

Federal Rules of Civil Procedure 19(a) .......................................................................................10

Federal Rules of Civil Procedure 19(b) .......................................................................................10

Federal Rules of Civil Procedure 69(a) ..................................................................................10, 11

22 U.S.C. § 2371 ............................................................................................................................5

28 U.S.C. § 1610(c) ......................................................................................................................12

28 U.S.C. § 1610(g) ................................................................................................................1, 6, 7

50 U.S.C. App. 2405(j) ..................................................................................................................5

**OTHER AUTHORITIES**

Export Administration Act of 1979 ................................................................................................5

Foreign Assistance Act of 1961 .....................................................................................................5

N.Y. U.C.C. § 4-A ......................................................................................................................8, 9

*State Sponsors of Terrorism*, U.S. Dep't of State,
   http://www.state.gov/s/ct/c14151.htm ......................................................................................6

Terrorism Risk Insurance Act of 2002 ....................................................................................1, 6, 9

**TREATISE**

11 Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, *New York Civil Practice:
   CPLR § 5225.12* (2d ed. 2007) .................................................................................................7

INTRODUCTION

Respondent Deutsche Bank Trust Company Americas ("DBTCA") respectfully submits this Memorandum of Law in response to the Court's February 24, 2011 Order to Show Cause why the relief sought by Petitioners should not be granted.

PRELIMINARY STATEMENT

Petitioners state that they are family members of and representatives of the estates of certain U.S. nationals who were killed in a terrorist attack on an Israeli airport. Petitioners obtained a judgment (as further defined below, the "Judgment") against the Democratic Republic of North Korea ("DPRK") and its intelligence agency, the Cabinet General Intelligence Bureau ("CGIB"), awarding Petitioners compensatory and punitive damages in connection with the attack. They now seek to satisfy the Judgment against the DPRK and CGIB (collectively, the "Judgment Debtors") by seizing certain accounts at DBTCA that were blocked pursuant to sanctions regulations relating to North Korea (as further defined below, the "DBTCA Blocked Accounts"). To that end, Petitioners on February 24, 2011 obtained an order directing DBTCA to show cause why the proceeds of the DBTCA Blocked Accounts should not be turned over to Petitioners, in satisfaction of the Judgment, pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Sections 5225(b) and 5227 of the CPLR, and 28 U.S.C. § 1610(g), a provision of the Foreign Sovereign Immunities Act ("FSIA").

DBTCA sympathizes with Petitioners and has no objection, in principle, to their efforts to satisfy the Judgment. However, before the Judgment may be executed against funds in the DBTCA Blocked Accounts, Petitioners must carry their burden of demonstrating that the accounts are in fact assets of Judgment Debtors. As explained in detail below, Petitioners have not yet met this burden, because the blocked accounts they have identified may be owned, in whole or in part, by various third parties that are unrelated to the Judgment Debtors.

1

Notwithstanding Petitioners' suggestion to the contrary, the mere fact that the DBTCA Blocked Accounts contain funds blocked pursuant to sanctions regulations relating to North Korea does not mean that the funds are property of the DPRK or any of its agencies or instrumentalities. To the contrary, the vast majority of accounts at issue were blocked pursuant to regulations that required the freezing of any transaction in which any "national" of North Korea was involved, even individuals and entities with no relationship to the government of the DPRK. To establish that these assets are owned by the Judgment Debtors, Petitioners must therefore do more than simply show that the assets have been blocked.

Moreover, before this matter is adjudicated, all third parties with a claim to the DBTCA Blocked Accounts should be joined in the action, if feasible, to prevent prejudice to their rights and avoid the risk that they will later make a claim against DBTCA for the same funds sought by Petitioners. To the extent that joinder of a particular third party is not possible, any relief granted to Petitioners should exclude all accounts to which that party may have a legitimate claim. Otherwise, the rights of such absent parties could be prejudiced, and DBTCA would be put at risk of multiple and inconsistent liability.

STATEMENT OF FACTS

On August 5, 2010, Petitioners obtained an Amended Judgment (the "Judgment") in the United States District Court for the District of Puerto Rico awarding them compensatory and punitive damages against the government of the DPRK and one of its agencies, the CGIB. *See* Pet. Ex. B. Petitioners seek to execute on the Judgment by obtaining an order directing the turnover of funds in the DBTCA Blocked Accounts.

The DBTCA Blocked Accounts consist of 13 Accounts, identified in the following table, that were set up to hold the proceeds of wire transactions that were routed

through DBTCA (or its predecessor, Bankers Trust), as intermediary bank, and blocked pursuant to sanctions regulations:

| Account Number | Date of Transaction | Original Principal | Originator | Originating Bank | Beneficiary Bank | Beneficiary |
|---|---|---|---|---|---|---|
| 2-841 | 7/6/1992 | $45,000.00 | ▉ | ▉ | ▉ | ▉ |
| 2-868 | 8/28/1992 | $89,000.00 | ▉ | ▉ | ▉ | ▉ |
| 2-876 | 1/1/1993 | $100,000.00 | - | ▉ | ▉ | ▉ |
| 2-884 | 1/1/1993 | $6,500.00 | - | ▉ | ▉ | ▉ |
| 2-892 | 1/1/1993 | $1,650.78 | - | ▉ | ▉ | ▉ |
| 2-905 | 1/1/1993 | $10,000.00 | ▉ | | ▉ | ▉ |
| 2-913 | 3/2/1993 | $4,925.00 | ▉ | ▉ | ▉ | ▉ |
| 2-921 | 3/4/1994 | $384,000.00 | ▉ | ▉ | ▉ | ▉ |
| 2-948 | 3/4/1994 | $1,499,968.08 | ▉ | ▉ | ▉ | ▉ |
| 2-956 | 3/31/1999 | $52,167.78 | ▉ | | | ▉ |
| 2-964 | 3/31/1999 | $1,494.82 | ▉ | | | ▉ |

| | | | |
|---|---|---|---|
| 2-972 | 6/23/1999 | $35,614.30 | ▇ |
| 2-014 | 3/11/2009 | $7,861.23 | ▇ |

These accounts are not necessarily the property of the DPRK or its agencies or instrumentalities. Under the North Korean sanctions regulations applicable from 1991 through 1994, the period during which the vast majority of the accounts were blocked, U.S. banks were required to block any transaction involving a "national" of North Korea, whether or not the national had any connection to the government of the DPRK or its agencies or instrumentalities. *See, e.g.*, 31 C.F.R. § 500.201 (1992-94).[1] The fact that a bank blocked wire transactions during this period therefore does not necessarily reflect a determination that the DPRK or its agencies or instrumentalities had a property interest in the funds being transferred.[2]

Similarly, the blocking of wire transactions after 1994 does not necessarily indicate that the transactions involved the government of the DPRK. Several of the post-1994 transactions appear to have been blocked simply because they involved an entity ▇ ▇ that appeared on OFAC's list of Specially Designated Nationals until 2009. *See, e.g.*, 73 Fed. Reg. 37,536-84 (July 1, 2008).[3] Entities that appear on the SDN list may or may not be agencies or instrumentalities of the DPRK.

---

[1] For the Court's convenience, copies of the North Korean sanctions regulations in effect during each year from 1992 through 1994 are attached as Exhibit 1 to the Gimbel Declaration.

[2] Moreover, as noted in DBTCA's Answer (*see* Ninth Affirmative Defense and Objection in Point of Law), one of the DBTCA Accounts ( ▇ 2-948) appears to be separately subject to blocking based on the involvement of ▇ in the transaction. Transactions involving ▇ are blocked not because of any connection to the DPRK, but under the sanctions regulations prohibiting transactions involving parties determined to be involved in the proliferation of weapons of mass destruction. *See* 31 C.F.R. § 544.201.

[3] For the court's convenience, a copy of 73 Fed. Reg. 37,536-84 (July 1, 2008) is attached as Exhibit 2 to the Gimbel Declaration.

- 4 -

Moreover, there are other third parties, unrelated to North Korea, that may claim an interest in one or more of the DBTCA Blocked Accounts. Each account was set up to hold the proceeds of a wire transfer involving multiple parties, including an originator (the person who sent the funds), an originating bank (the financial institution used by the originator to send the funds), one or more intermediary banks, a beneficiary (the intended recipient of the wire transfer), and the beneficiary's bank. Even assuming that Petitioners could establish that the DPRK or one of its agencies or instrumentalities had an interest in a particular wire transaction, the Court would still need to determine whether any of the other parties to the wire has a superior property interest in the funds.

## ARGUMENT

I.   TRIA DOES NOT APPLY TO PROPERTY OF THE DPRK.

In seeking to satisfy their Judgment by executing against blocked assets, Petitioners rely primarily on the Terrorism Risk Insurance Act of 2002, PL 107-297 ("TRIA"). Section 201(a) of TRIA provides that, in every case in which a person has obtained a judgment against a "terrorist party" on a claim based on an act of terrorism:

> the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in order to satisfy any judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a) (emphasis added).

Under the plain terms of the statute, in order for blocked assets to be available for execution, they must be assets of a "terrorist party" as defined in the statute. With respect to foreign states, TRIA defines a "terrorist party" as "a foreign state designated as a state sponsor of

terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)." *Id.* § 201(d)(4).[4]

Currently, the DPRK is not a foreign state designated as a state sponsor of terrorism under either statutory provision.  Rather, on October 28, 2008, the State Department rescinded its determination that the DPRK was a state sponsor of terrorism.  *See* Rescission of Determination Regarding North Korea, 73 Fed. Reg. 63,540-01 (Oct. 28, 2008); *see also State Sponsors of Terrorism*, U.S. Dep't of State, http://www.state.gov/s/ct/c14151.htm (last visited Mar. 3, 2011).  Thus, assets of the DPRK now fall outside the purview of TRIA.

II.   IN ORDER TO EXECUTE AGAINST THE DBTCA BLOCKED ACCOUNTS, PETITIONERS MUST ESTABLISH THAT THE ACCOUNTS BELONG TO THE JUDGMENT DEBTORS.

Even if TRIA applied, Petitioners would not at this time be entitled to a turnover order because they have failed to demonstrate that the Judgment Debtors have a property interest in the DBTCA Blocked Accounts.  Under TRIA and the other laws on which the Petitioners rely – specifically, Sections 5225(b) or 5227 of the CPLR and Section 1610(g) of the FSIA – an asset is not subject to execution unless it belongs to the Judgment Debtor.

   A.   *Under the Terrorism Risk Insurance Act, Plaintiffs Must Show That the Blocked Accounts Are Assets of the Judgment Debtors.*

Section 201(a) of TRIA provides that, in every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism:

> the blocked assets *of that terrorist party* (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in order to satisfy any judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

---

[4] Petitioners contend that North Korea should be deemed a "terrorist party" under a provision of the statutory definition which extends to "terrorist organizations."  *See* Pet. ¶ 15 n. 1.  Plainly, however, the term "terrorist organization" was intended to encompass actors other than foreign states; otherwise, there would not be a separate section of the definition which applies specifically to foreign states.

- 6 -

TRIA § 201(a) (emphasis added). The plain language of the statute requires Petitioners to meet their burden by proving that any assets against which they seek to execute their judgment are in fact "assets of" the judgment debtor. *See generally Weininger v. Castro*, 462 F. Supp. 2d 457, 494-500 (S.D.N.Y. 2006) (addressing "whether the blocked assets in question indeed belong to agencies or instrumentalities of Cuba").

> B. *Under the CPLR, Petitioners Must Demonstrate That the Blocked Accounts Are Assets of the Judgment Debtors.*

The CPLR provisions under which Petitioners seek relief impose essentially the same requirement. CPLR Sections 5225(b) and 5227 allow a judgment creditor to bring a proceeding against a garnishee who either "possesses money or property in which the judgment debtor has an interest" (§5225(b)) or "is or will become indebted to the judgment debtor" (§5227).[5] In order to execute a judgment against the property held or the debt owed by the garnishee, the judgment creditor must first establish that it belongs (in the case of property) or is owed (in the case of debt) to the judgment debtor. *See, e.g., Continental Commerce Corp. v. York Plastic Products Corp.*, 237 N.Y.S.2d 278, 280 (Sup. Ct. 1963) ("Since movant has failed to produce proof to satisfy the court that the said third party is indebted to the judgment creditor, the motion is denied"). The judgment creditor bears the burden of establishing this fact by "competent evidence." *See Trustco Bank, Nat. Ass'n v. Strong*, 699 N.Y.S.2d 805, 807 (3d Dep't 1999) (dismissing petition where "petitioner failed to satisfy its burden of establishing that any debt was owed by the limited partners to the partnership").

---

[5] CPLR §§ 5225(b) and 5227 are often cited interchangeably, *Citibank (South Dakota), N.A. v. Island Fed. Credit Union*, 740 N.Y.S.2d 546 (App. Term 2001), but, in the majority of decisions, bank deposits have been held to be "debts" and subject to § 5227. 11 Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, *New York Civil Practice: CPLR § 5225.12* (2d ed. 2007).

      C.      *The FSIA Also Requires That Petitioners Demonstrate That the Blocked Accounts Belong to the Judgment Debtors.*

Section 1610(g) of the FSIA likewise requires that a judgment creditor establish that the assets against which it seeks to execute belong to the judgment debtor. The statute by its terms makes assets available to satisfy judgments against a foreign state only to the extent such assets constitute "property of a foreign state" against which a judgment has been obtained or "property of an agency or instrumentality of a foreign state." 28 U.S.C. § 1610(g)(1). To execute under this provision, Petitioners must therefore demonstrate that the assets they seek belong to the DPRK or one of its agencies or instrumentalities.

      D.      *Petitioners Have Failed to Demonstrate That the DBTCA Blocked Accounts Belong to the Judgment Debtors or Their Agencies or Instrumentalities.*

Petitioners have thus far failed to make the necessary showing that each of the blocked accounts against which they seek to enforce their judgment is owned by (or constitutes a "debt" owed to) the Judgment Debtors. The only "evidence" Petitioners have submitted on this point is the fact the DBTCA Blocked Accounts were blocked pursuant to sanctions regulations relating to North Korea.

As noted above, however, most of the accounts at issue were blocked prior to 1995, when applicable sanctions regulations required banks to block any transaction involving a North Korean "national," including transactions involving nationals unrelated to the government of the DPRK or its agencies or instrumentalities. The mere fact that a wire transaction was blocked during this period thus does not necessarily reflect a determination that it involved assets in which the DPRK or its agencies or instrumentalities had an interest.

And even to the extent that a few of the transactions involved parties that appear on their face to be agencies or instrumentalities of the DPRK, that does not necessarily mean that the DPRK has an attachable property interest in the funds. Each of the transactions involves a

blocked wire transfer, and in each case there are other parties to the blocked wire transfer who may have a superior property interest in the funds. Depending on the facts and circumstances, courts have reached varying conclusions on which of the various parties to a wire transfer has a superior claim to the funds. *See, e.g.*, *Grain Traders Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998) (in the event of a failed EFT, only the party in privity with the intermediary bank, *i.e.*, the originating *bank*, has a claim under Article 4-A for the return of funds); *Bank of New York v. Nickel*, 14 A.D.3d 140, 145 (1st Dep't 2004) (holding that funds should be released to beneficiary upon lifting of sanctions blocking funds, as title had passed from originator following initiation of funds transfer).

Furthermore, there is a substantial legal question as to whether funds in the possession of an intermediary bank are subject to execution to satisfy a judgment against the originator or beneficiary of the wire. The Second Circuit has held that, under Article 4-A of New York's Uniform Commercial Code, neither the originator nor the beneficiary of a wire transfer has an attachable property interest in a wire transfer while it is in the possession of an intermediary bank. *See Shipping Corp. of India Ltd., v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank"); *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 115-16 (2d Cir. 2010) (citing *Jaldhi*, 585 F.3d at 68-71).

While a recent decision in this district has held on federal preemption grounds that Article 4-A does not apply to judgment enforcement proceedings under TRIA, *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, at 531-38 (S.D.N.Y. 2010),[6] this proceeding

---

[6] An unpublished decision of another judge of this district has reaches a similar conclusion, also relying on TRIA and citing *Hausler*. *See*, *e.g*., *Levin v. Bank of New York*, No. 09 CV 5900 (RPP), 2011 WL 812032, at *16-18 (S.D.N.Y. Mar. 4, 2011). While this decision asserts, in the alternative, that other

falls outside the scope of TRIA. Before granting the relief sought in Petitioners' Petition for Turnover, the Court must therefore independently determine whether the blocked wires at issue here are subject to attachment or whether, as the Second Circuit held in *Jaldhi*, the blocked wires were merely "in the temporary possession of an intermediary bank [and thus] are not property of either the originator or the beneficiary." *Jaldhi*, 585 F.3d at 71.[7]

### III. ALL THIRD PARTIES WITH AN INTEREST IN THE ACCOUNTS SHOULD BE JOINED TO THE EXTENT FEASIBLE.

Under Rule 19(a),[8] Petitioners must join all persons subject to service of process who claim an interest in the subject of the action and are so situated that disposing of the proceeding in their absence may "(i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." Fed. R. Civ. P. 19(a). To the extent made applicable to this judgment enforcement proceeding by Federal Rule of Civil Procedure 69(a), the CPLR imposes substantially similar requirements. *See* CPLR § 1001.[9]

---

statutory provisions within FSIA may lead to the same conclusion, *see id.* at 18, the Second Circuit has yet to definitively address the question.

[7] If , notwithstanding the authorities cited above, the Court holds that TRIA is applicable, and finds that certain DBTCA accounts involving wires that appear to have been originated by an embassy are property of the DPRK, it may also be necessary to resolve the question of whether the funds are immune from execution under the exception to TRIA applicable to property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Foreign Relations. *See* TRIA § 201(d)(ii)(a)(4).

[8] Federal Rule of Civil Procedure 69(a) provides that supplemental proceedings to enforce a judgment "must accord with the procedure of the state where the court is located but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). Because the Federal Rules of Civil Procedure have the "force and effect of federal statutes," they govern where applicable. *Schneider v. Nat'l R.R.. Passenger Corp.*, 72 F.3d 17, 19 (2d Cir. 1995).

[9] CPLR § 1001(a), like Rule 19(a), states that parties should be joined if they might be "inequitably affected" by a judgment in the action or if their presence is necessary to afford "complete relief." CPLR § 1001(b) directs the court to consider the same factors mentioned in Rule 19(b) when deciding whether to dismiss an action where a necessary party cannot be joined.

Here, as discussed above, there are numerous third parties who may claim an interest in the DBTCA Blocked Accounts. The ability of these third parties to protect their interests in the accounts may be impaired if this action is adjudicated in their absence. Moreover, resolving this matter in the absence of these third parties would create a "substantial risk" that DBTCA will face "double, multiple, or otherwise inconsistent obligations" if they later make claims against DBTCA for the same funds. *See id.*; *cf. Weininger v. Castro*, 462 F. Supp. 2d 457, 501 (S.D.N.Y. 2006) (finding that a bank faced a "reasonable fear of double liability or conflicting claims" where blocked funds sought by petitioners were claimed by "juridically separate entities not previously sued or found liable for the acts in question").

In similar cases, where a party with a potential interest in a bank account that is the subject of a turnover proceeding has not been joined, courts have held dismissal is appropriate because the absent party is indispensable to the proceeding. *Citibank (South Dakota), N.A. v. Island Fed. Credit Union*, 740 N.Y.S.2d 546, 547 (App. Term 2001) ("the proceeding was properly dismissed without prejudice" because the property rights of the absent account owner "in the joint account would be substantially affected by a court's determination to turn over funds in the account to the judgment creditor"); *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 411 N.Y.S.2d 490, 492 (Civ. Ct. 1978) (dismissing petition where judgment creditor failed to join judgment debtor's wife, who had an interest in the bank accounts). Here, we respectfully submit that the Court should, before granting the relief sought in the Petition for Turnover, order Petitioners to join all third parties who have an interest in the DBTCA Blocked Accounts. To the extent that Petitioners are unable or unwilling to join absent third parties with a claim to the accounts, the Petition for Turnover should be dismissed as to those accounts.

In the alternative, to the extent that the Court declines to order petitioners to join such adverse claimants, the Court should, at a minimum, establish a procedure under which DBTCA (and any other similarly situated banks) may either serve interpleader petitions on adverse claimants or otherwise give such claimants notice of this proceeding. The case relied upon by Petitioners in their own Turnover for Petition followed similar procedures in order to ensure that the rights of absent third parties were respected and that stakeholder banks were not subject to multiple and inconsistent obligations from parties with conflicting claims to the same funds. *See Hausler*, 740 F. Supp. 2d at 541-42; *see also* Pet. for Turnover at 7 (citing *Hausler*), 2010 WL 3817546, at *14-15 (noting that respondent banks had opportunity to file interpleader petitions joining potential third party claimants)).

To the extent that the Court imposes on the respondent banks the considerable burden of notifying adverse claimants of the proceeding, it should also take steps to ensure that the banks are compensated for all related costs. "Attorneys fees and costs are generally awarded to a disinterested stakeholder who has 'expended time and money participating in a dispute not of his own making" such as this one. *Weininger v. Castro*, 462 F. Supp. 2d 457, 501 (S.D.N.Y. 2006) (quoting *Fidelity Brokerage Servs.*, 192 F. Supp. 2d 173, 183 (S.D.N.Y. 2002)); *see also Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) ("disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees"); *Hausler*, 740 F. Supp. 2d at 541-42 (similar).

## CONCLUSION

For the foregoing reasons, DBTCA respectfully requests that the Court decline at this time to grant the relief sought in the Petition and referenced in the Order to Show Cause. Before turning over any accounts to Petitioners, the Court should ensure that all legal

requirements are satisfied, including those set forth above and in DBTCA's Answer to Petition for Turnover and Objections in Point of Law.[10]

Dated: New York, New York
April 11, 2011

COVINGTON & BURLING LLP

By: _____
Mark P. Gimbel

The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000 (phone)
(212) 841-1010 (fax)
mgimbel@cov.com

*Attorneys for Respondent Deutsche Bank Trust Company Americas*

---

[10] Because this is a special proceeding seeking the turnover of assets to satisfy a judgment pursuant to CPLR §§ 5225 and 5227, as made applicable by Federal Rule of Civil Procedure 69(a), DBTCA has filed an Answer and Objections in Point of Law in accordance with the CPLR provisions governing special proceedings. *See* CPLR § 404(a).